The opinion of the Court was delivered by
Withers, J.
In 1821, it was enacted, “ that if any white person shall harbour, conceal or entertain any runaway or fugitive slave, such person shall be liable to be indicted for a misdemeanor or prosecuted in a civil action for damages, at the election of the owner or person injured.” (7 Stat. 460.)
The defendant was indicted for harbouring two slaves, in two separate counts, each charging the property of the slaves to be in one John U. Ingram ; the first proceeding to allege that the *515 slaves were runaways and fugitives from the service of John U. Ingram; the last reciting that the slaves had been hired, for and during the term of the harbouring, by the owner, each to a different person (named), and were fugitives, respectively, from the service of the person to whom they had been .hired.
The objection to the validity of the conviction touching the first count is, that the evidence shows this only, that John U. Ingram, as executor, hired out and delivered the slaves, in December, 1849, each to a different person, for the year 1850, and while they were in the woods, to wit, in December, 1850, hired them again ; wherefore the slaves were not fugitives from the service of Ingram, but from the service of those who had become his bailees, or who were the owners of the negroes for the time being, and therefore alone entitled to their service.
Touching the second count, it is objected to for duplicity, inasmuch as it charges two negroes, belonging to Ingram, as executor, to have been let on hire to two different persons, and to have been harboured by the defendant as fugitives from the service of those two persons respectively. So that the ground taken here is, that the first count is unsupported by the evidence, and the spcond is insufficient in law.
All the members of this Court have reached the conclusion, though there is some diversity in the directions by which they have approached it, that the defendant can take nothing by his motion.
Some think that it is quite immaterial to allege that the slave was a fugitive from the service of any one, where indictment is resorted to: that the offence is completely established when it is proved that “ any white person shall harbour, conceal or entertain any runaway or fugitive slavethat the designation, to wit, “ the person injured,” was introduced in order to secure a civil action to a person who had a slave on hire and who was injured by such an .act as is imputed to the defendant. This view is perhaps much fortified by adverting to the 2d section of the Act, which must be presumed to have described the same offence as had been defined in the 1st, and it is there done by *516 these words : “ If any free negro, mulatto or mustizo shall harbour, conceal or entertain any fugitive or runaway slave, and be convicted thereof, &c., he shall suffer,” &c. No idea of pecuniary detriment, by loss of service to owner or other person, seems to be at all developed by the language of the second section of the Act cited as an element entering into the offence of harbour-ing, concealing or entertaining a runaway slave.
We should not lose, sight of the leading purpose of the legislation, which can scarcely be any other than to provide exemplary punishment for one who should seduce and corrupt a slave by means of harbouring, &c., and thus in a most mischievous manner interfere with this species of the right of property appertaining to the absolute or qualified owner. Nor is it impossible to conceive that a slave might be seduced to runaway and be harboured, who neither did m fact nor could render service to any body, and would be, in a pecuniary sense, an unmitigated burthen. Yet there can be no doubt a free negro could be- convicted in such circumstances, by the very terms used, and there can be no reason to doubt that the same offence was treated of in both sections of the Act.
Such considerations maintain the conviction on the Circuit, by showing that the offence is well alleged and well proved, without reference to the inquiry, from whose service had the slave escaped 1
This view satisfies a majority of us that the conviction of Holland can be properly rested on the first count of the indictment.
The other members of the Court prefer to place their concurrence in the result upon the opinion, that the second count is not bad for duplicity. They think that the same act of harbouring is charged to have embraced two fugitive slaves, and no valid objection is found in the allegation, and the corresponding proof, that they were fugitives from the service of two different qualified owners or hirers-; that the act of dividing a pone of bread between them at the same time, or feeding, entertaining, or concealing them during the same space of time, is not necessarily divisible into two distinct, separate, independent offences; that *517 this count stands on as good a footing, and on the same principle, that maintains one for an assault and battery, at the same time, on two persons, which, according to Arch. Cr. Pl. 25, it is now generally understood may be done, (King vs. Benfield, 2 Bur. 984,) or a count for a libel on two or more persons, where the publication is one single act. (King vs. Jenour, 7 Mod. 400, and King vs. Beufield, supra.)
It is thought, that the position now under consideration derives support from the observation of Sir Matthew Hale, (P. C. 531,) as follows: “ It seems to me that if he (the prisoner) steals goods of A. of the value of six pence, goods of B. of the value of six pence, and goods of C. of the value of six pence, being perchance in one bundle, or upon a table, or in one shop, this is grand larceny, because it was one entire felony, at the same time, though the persons had several properties, and, therefore, if in one indictment, they make grand larceny.” This doctrine was not repudiated in Thurston’s case, (2 McM. 382,) who being entrusted, as carrier, with the cotton of sundry persons, was indicted in several cases for the larceny of the several parcels and held to be answerable accordingly. It was there ruled that Thurston might be indicted in the gross, as for one larceny, on the authority of the doctrine cited from Hale, but it did not follow that he must be. In Thurston’s case, it was insisted that what is objected to here was the true course.
The first form of indictment in Chitty’s Crim. Law, p. 960, charges in one count the property of two different persons to have been stolen, and the author says, “ where several persons’ goods are taken at the same time, so that the transaction is the same, the indictment may properly include the whole, but not so if the taking were at different times and in accord with this is the opinion of Mr. Russell, (vol. 2 Cr. Law, p. 126,) who considers it supported by East, P. C. vol. 2, ch. 16, sec. 136, p. 740-1.
The following proposition may also be found in the older books on Criminal Law, to wit: “ If one person, at divers times, steals goods or money, in several parcels, as 4d at one time, 8d at another, and 6d at another, the whole amounting to above *518 12d, this is grand larceny; and it may all be put together in one indictment, and lay the day of (a day subsequent to) the last taking.” (Vide Cr. Circuit Comp. 324; Hale P. C. &c.) It is presumed the several takings meant here are to be of the same person’s property; and it has been ruled in England, that if a servant secrete, at various times, sundry articles of his master’s property and the asportavit from the house be of all at the same time, it is one larceny of the whole. The rule, however, above cited, appears to be quite obsolete or to have been repudiated by the Courts of England, where it originated, as may be seen from authorities cited in the note by Russell, vol. 2, p. 126.
Upon this point also, the case of the State vs. Johnson, (3 Hill, 1,) may be cited with effect. The prisoner, by one count, was charged with stealing three negroes, (of the same owner,) and it seems they did not all disappear, at the same time. The objection taken here was made the sole question there. Duplicity was imputed to the count, by reason of combining several felonies. The magnitude of the issue there implies grave consideration by the Court, the cases were considered which bore upon the point, and it was overruled. The form of the indictment was thought to be quite favorable to the prisoner, since an acquittal or conviction on that indictment would operate a bar to a future prosecution for stealing either of the negroes mentioned.
It is moreover considered, that the transaction, as charged in the second count of the indictment before us, being the same, laid to have been at the same time, what is averred as to the ownership of the negroes and the right to service by the hirers, serves rather as means to designate and identify them than any other purpose. So far as this is concerned, it would seem rather to operate an advantage to the defendant, by way of distinct notice. It is not regarded as approaching a case, usually found in the books, by way of illustration, where there is a joinder, in the same count, or in different counts of the same indictment, of the charges of murder and larceny, and the like.
Such considerations have led the judgment of some members *519 of the Court to the result that the conviction may be referred to and can well stand upon the 2d count.
In this and like cases, it may be well to observe what is said by Archbold (Crim. Plead, p. 25) and other authors, and repeated with favor in our case of the State vs. Johnson, heretofore quoted, to wit: “ But it is extremely doubtful if it (duplicity) can be made the subject of a motion in arrest of judgment or of a writ of error; and it is cured by a verdict of guilty as to one of the offences and not guilty as to the other.” What is meant by this, and what is supposed to be considered the true mode of objection, where there is ground for it, touching one count or various counts improperly joined, may be seen in what is said in the case of Rex vs. Young, (3 T. R. 106).
The motion is refused.
O’Neall, Evans, Wardlaw, Frost and Whitner, JJ. concurred.

Motion refused.'